## Whalen, Appellant, *v.* Philadelphia Rapid Transit Co.

Argued December 5, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Jos. R. Embery*, of *Embery, Otterson & Fuges*, for appellant, cited: Gearhart v. Ry., 93 Pa. Superior Ct. 503; Rice v. R. R., 271 Pa. 180; Smathers v. Ry., 226 Pa. 212; Knobeloch v. Ry., 266 Pa. 140; Cathcart v. Transit Co., 62 Pa. Superior Ct. 215; Rogers v. Traction Co., 69 Pa. Superior Ct. 250.

*Philip Price* and *J. J. K. Caskie*, for appellee, cited: Patton v. George, 284 Pa. 342; Woomer v. Ry., 80 Pa. Superior Ct. 261; Griffiths v. Traction Co., 292 Pa. 489; Mack v. R. R., 92 Pa. Superior Ct. 455; Myers v. R. R., 150 Pa. 386; Bernstein v. R. R., 252 Pa. 581; Szmigel v. Director General, 76 Pa. Superior Ct. 230; Dove v. R. R., 253 Pa. 439; Lessig v. Transit & Light Co., 270 Pa. 299; Tozer v. Ry., 45 Pa. Superior Ct. 417; Walker

v. Transit Co., 274 Pa. 121; Morningstar v. R. R., 290 Pa. 14; Underwood v. Rys., 238 Pa. 332.

OPINION BY MR. JUSTICE FRAZER, January 7, 1929:

Plaintiff, a local expressman, using a horse and covered wagon in his occupation, was injured when driving his team across defendant's double track railway on Frankford Avenue, in the City of Philadelphia. While the wagon was on the southbound track the left rear wheel was struck by defendants' car and plaintiff thrown from his seat in the vehicle to the ground, sustaining severe injuries. This action was brought to recover damages for the injury sustained. The jury returned a verdict in favor of plaintiff, which the trial court set aside and entered judgment for defendant, holding plaintiff was guilty of contributory negligence. Plaintiff appealed.

In plaintiff's statement it is claimed the street car motorman failed to respect the rights of appellant in crossing the railway tracks; that he neglected to give warning of his approach; operated the car in a reckless and dangerous manner, at excessive speed, and that he negligently collided with plaintiff's wagon.

Not one of these allegations is supported by the evidence, even by that of plaintiff himself. As shown by his testimony, he had driven from a freight station over a driveway which intersected Frankford Avenue at right angles, and upon reaching the avenue, stopped his horse about three feet from the nearest track, the one over which the southbound car, which struck his vehicle, was operated. Cars did not stop at this point; the nearest regular stop on his right being Sellers Street, 400 feet distant; the nearest stop on his left, at Unity Street, about 150 feet distant. Upon stopping near the track, plaintiff waited until a trolley car and two motor vehicles passed, then, according to his testimony, he says, "I looked up the southbound track and could see as far as Sellers Street, about 400 feet, and I couldn't

see any trolley.   Then I looked on the northbound track and there was one below Unity Street, which is about 150 feet, and it stopped at Unity Street." Having made these observations, as testified, he started his horse, reached the tracks and was almost immediately struck by the car coming from the north; or to use his own words: "I started the passage right straight across, and just as I got nearly all the way across, the horse's feet were on the northbound track, I heard a noise and it struck me on the left-hand wheel, cutting a piece out of the iron hub on a v-shape and breaking the clips on my single trees.   I was knocked out on the top of my head between the horse and the wagon." He was rendered insensible and could remember no more of the details of the accident.   None of the witnesses called by plaintiff could coroborate his statements.   They were at the time in near-by buildings, heard a loud grinding of car brakes, rushed out too late to see the collision, and helped carry the injured man from the place where he was thrown. There was no evidence by plaintiff's witnesses that he had looked to see whether cars were approaching, or that the motorman had not given warning with his gong, or that the car was moving at an excessive speed; and in fact, nowhere in the testimony is there an intimation of negligence on the part of defendant.

The motorman, whose testimony was not contradicted, testified: "When I came down Frankford Avenue, going on down, there was a wagon coming out or came around there at that crossing at the railroad, the Reading Railroad, and I had about twenty feet to stop in, and I kept ringing my gong all the way down, the minute I saw the horse's head...... I done all kinds of things to stop. I put the sand on and the brakes on, and I jacked her, and everything else and tried to stop, but I had too short a distance to stop in...... I had no view and there was no hope for me, and this man drove out perfectly in front of me." The motorman's testimony that he gave warnings and made efforts to stop his car was

fully corroborated, not only by the conductor of the car, but also by four passengers who were in the car at the time of the collision. They were aroused by the clanging of the bell and the loud grinding of the brakes; they looked out the windows and first saw plaintiff's team about twenty feet away. One of them testified: "The motorman rung his bell and put on the brakes, and pretty nearly threw everybody out of their seats." Another said: "I heard the conductor sound the gong and immediately he put the brake on, and just about that instant the crash happened." Another witness standing at Unity Street, 150 feet distant, waiting for a car, testified he saw the plaintiff's team start to move upon the tracks when the car was distant "sixty feet or a little more." The testimony is convincing that the speed of the trolley at the time of the accident was not more than twelve or fifteen miles an hour, and this evidence is strengthened by the fact that the motorman brought the car to a stop three feet beyond the place of the accident. No testimony was in fact given contradicting the evidence adduced for defendant, and viewing the entire record in every aspect favorable to plaintiff, the conclusion is overwhelming that no negligence is attributable to defendant company. The locality was familiar to plaintiff; he had driven his teams over the same crossing for thirty years; he knew the situation of defendant's tracks on Frankford Avenue; he knew that the driveway from the freight station led directly over them. Yet with all this familiarity with the location, the only precaution he took towards safety was to look up and down the tracks and then drive upon them. He had an unobstructed view of more than 400 feet in the direction from which the southbound car was coming; yet, as he says, he saw no car in all that distance. There was, however, one coming towards him from that direction, as an unsurmountable physical fact proves. He testified that his team moved a distance of only eighteen feet when it was struck. If then there had actually been no car in sight

when he looked, the car which struck his wagon would have traveled a distance of 400 feet during the few seconds required for his team to travel eighteen feet. A simple mathematical calculation will show that for the street car to have covered a distance of 400 feet in so brief a time, it would of necessity have moved at a speed far beyond fifteen miles an hour.

It is therefore clearly evident that the car was close at hand and in sight at the time plaintiff started to cross the tracks, and, if he had looked in the direction it was coming, it must have been a heedless, quick glance, which all evidence in the case shows was not an adequate precautional act of the duty required by the situation: Warner v. Ry. Co., 141 Pa. 615, 620.

In the light of the complete failure on the part of plaintiff to establish negligence by defendant company, the verdict cannot be permitted to stand and the court below properly entered judgment for defendant non obstante veredicto.

Judgment affirmed.